UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

FRANK BATES, *et al*,                                §
                                                             §
            Plaintiffs,                             §
VS.                                                      §        CIVIL ACTION NO. 2:12-CV-00387
                                                             §
RICHARD N LAMINACK, *et al*,             §
                                                             §
            Defendants.                            §

## <u>ORDER</u>

All of the Defendants, through four essentially identical motions and two joinders in previously filed motions, seek dismissal, abstention, or abatement of this action.  D.E. 20, 21, 22, 30, 35, 38.  Plaintiffs have responded.  D.E. 32, 34, 36, 40.  And one set of Defendants has replied.  D.E. 37.  Because the motions are the same or similar and have overlapping issues, and in the interest of judicial efficiency and economy, the motions will be addressed jointly and the arguments will be considered globally.

As set out in detail below, the Court rules as follows on Defendants' challenges:

1. The Court DENIES the Fed. R. Civ. P. 12(b)(1) request to dismiss for lack of jurisdiction;

2. The Court ORDERS Plaintiffs to amend their Complaint and DENIES without prejudice the Fed. R. Civ. P. 12(b)(7) request to dismiss for failure to join indispensable parties;

3. The Court DENIES the Fed. R. Civ. P. 12(b)(1) request to abstain;

4. The Court DENIES the Fed. R. Civ. P. 9(b) request to dismiss for inadequate pleading of fraud;

5. The Court DENIES the Fed. R. Civ. P. 12(e) request for more definite statement;

6. The Court DENIES the Fed. R. Civ. P. 12(f) request to strike immaterial and scandalous allegations; and

7. The Court GRANTS the requested stay of proceedings pursuant to the Defendants' plea in abatement based upon Tex. Bus. & Comm. Code § 17.505.

## I. Rule 12(b)(1) Jurisdiction

Plaintiffs filed this case directly in the United States District Court and have predicated federal jurisdiction on diversity of citizenship under 28 U.S.C. § 1332. Diversity jurisdiction requires both diversity of citizenship among plaintiffs and defendants and an amount in controversy exceeding $75,000, exclusive of interest and costs. In Defendants' challenges to this Court's subject matter jurisdiction, they argue both: (1) lack of diversity at the time the Complaint was filed and the impropriety of dismissals to cure diversity of citizenship; and (2) an insufficient amount in controversy.

### A. Diversity of Citizenship Exists

According to the Plaintiffs' Complaint, Stacie Taylor, a citizen of Alabama, was sued as a Defendant. D.E. 1, p. 7. As an Alabama citizen, Ms. Taylor is not diverse in citizenship from at least nine of the Plaintiffs. Summons was issued to Ms. Taylor, but the docket does not reflect service on her or a voluntary appearance. D.E. at 01/17/2013. Pursuant to Fed. R. Civ. P. 41(a)(1)(i), Plaintiffs sought and obtained an Order[1] allowing them to dismiss Ms. Taylor. D.E. 18, 19.

Defendants now argue that the dismissal of Ms. Taylor is ineffective to cure jurisdiction because jurisdiction must be evaluated only at the time the case is filed, citing *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 571 (2004) and *Capron v.*

---

[1] No order was required under the circumstances. Rule 41(a)(1)(i).

*Van Noorden*, 6 U.S. 126 (1804).  As a corollary, Defendants contend that amending a complaint to drop a non-diverse defendant is improper.  *ConnectU LLC v. Zuckerberg*, 482 F.Supp.2d 3, 19 (D. Mass. 2007), *rev'd on other grounds*, 552 F.3d 81 (1st Cir. 2008).

Defendants' jurisdictional challenge is incorrect.  First, *Capron*, is inapposite in that it addresses whether parties have the power to consent to jurisdiction where it does not otherwise exist.  That issue is not before the Court.  Both *Grupo Dataflux* and *ConnectU* recite the time-of-filing rule as the general rule for evaluating diversity jurisdiction.  Both cases, however, recognize that a well-established exception to that general rule exists with respect to the dismissal of a non-diverse, dispensable party:

- "Exceptions to the general rule are extremely limited as, for example, the ability of a court to dismiss a nondiverse, dispensable party in order to cure a jurisdictional defect. *See, e.g., Grupo*, 541 U.S. at 572, 124 S.Ct. 1920; *Newman–Green, [Inc. v. Alfonzo-Larrain*, 490 U.S. 826,] 832, 109 S.Ct. 2218 [(1989)]." *ConnectU, supra* at 15.

- "*Caterpillar* [*Inc. v. Lewis*, 519 U.S. 61, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996)], broke no new ground, because the jurisdictional defect it addressed had been cured by the dismissal of the party that had destroyed diversity.  That method of curing a jurisdictional defect had long been an exception to the time-of-filing rule. '[T]he question always is, or should be, when objection is taken to the jurisdiction of the court by reason of the citizenship of some of the parties, whether . . . they are indispensable parties, for if their interests are severable and a decree without prejudice to their rights may be made, the jurisdiction of the court should be retained and the suit dismissed as to them.' *Horn v. Lockhart*, 17 Wall. 570, 579, 21 L.Ed. 657 (1873)." *Grupo Dataflux*, 541 U.S. at 572.

The reason that the post-filing changes in *Grupo Dataflux* and *ConnectU* did not cure diversity jurisdiction was because they were changes within a party—not the

wholesale dismissal of a non-diverse party.   In *Grupo Dataflux*, the plaintiff was a partnership suing a Mexico corporation.   The citizenship of the partnership depended upon the citizenship of its partners.   A withdrawal of the non-diverse partners from the partnership during the course of the proceeding, however, was not permitted to cure diversity jurisdiction just as an individual's change of citizenship during the pendency of a proceeding will not alter the jurisdiction that attached at the time of filing.   *Grupo Dataflux*, 541 U.S. at 571.   In other words, jurisdiction that depends upon the condition of a party at the time of filing does not change simply because that condition later changes. *Id*. at 571-72.   Otherwise, parties could continually destroy jurisdiction throughout the pendency of a case by simply moving around the country.

The relevant issue in *ConnectU* was the citizenship of the parties, including a limited liability company whose membership changed and an individual whose citizenship as a college student on the move was difficult to pin down.   Both of those issues involved the "condition" on which citizenship is determined.   There was no dismissal of either party.   Thus *ConnectU* is only helpful insofar as it does acknowledge that there is an exception to the time-of-filing rule for dismissals of parties.

The Court may dismiss a non-diverse party in order to cure a jurisdictional defect.   *Grupo Dataflux*, 541 U.S. at 567; *Newman-Green*, 490 U.S. at 836-37.   "The time-of-filing rule has one well-established exception. A district court can dismiss a dispensable nondiverse party pursuant to Fed.R.Civ.P. 21 to cure a jurisdictional defect at any point in the litigation, including after judgment has entered."   *Ravenswood Investment Co. v. Avalon Correctional Services*, 651 F.3d 1219, 1223 (10th Cir. 2011).

The Defendants' motions are DENIED with respect to their argument that diversity jurisdiction does not exist based on the citizenship of the parties.

### B.  The Amount in Controversy is Sufficient

#### 1.  The Standard of Review and Applicable Law

Defendants challenge Plaintiffs' satisfaction of the amount in controversy requirement.  D.E. 20, pp. 12-17.  Defendants are correct that Plaintiffs must satisfy the $75,000 threshold individually and not as a group or class.[2]  *E.g., Rangel v. Leviton Mfg. Co.*, 2012 WL 884909 (W.D. Tex. March 14, 2012) (citing *Snyder v. Harris*, 394 U.S. 332, 335, 89 S.Ct. 1053 (1969)).  If Plaintiffs' good faith allegations of injury support the required amount, then Defendants must show—to a legal certainty—that Plaintiffs cannot actually meet the threshold with their causes of action.  *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S.Ct. 586, 590 (1938)).

The "good faith" requirement goes to the claims made and does not require that Plaintiffs plead a particular sum certain.  *See generally*, *Huber v. Taylor*, 532 F.3d 237, 246 (3d Cir. 2008).  The standard by which the Court reviews the complaint for indication of the necessary amount in controversy is whether the amount is "likely" to exceed $75,000 based on the types of claims alleged and the nature of the damages sought.  *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335-36 (5th Cir. 1995).

Defendants identify one statement in Plaintiffs' jurisdictional statement as the only statement on the amount of damages claimed.  That statement is, "[T]he amount in

---

[2]  Plaintiffs do not contest this proposition.

controversy exceeds $100,000." D.E. 1, p. 8. However, in a much later reference to "each Plaintiff," they recite that each seeks "the maximum allowable amount of actual damages that exceed the jurisdictional limits of this court." D.E. 1, p. 49. In addition, they request a 40% contingency fee on any recovery, exemplary damages without regard to statutory cap, and treble damages under the DTPA. *Id.* at 49-50. Last, they seek disgorgement of fees and expenses paid to the Defendants. *Id.* at 50.

As a preliminary matter, the Defendants do not dispute that the Plaintiffs' causes of action, if proven to be factually correct, do support the categories of damages claimed. Compensatory damages are a natural remedy for each claim. Their claims also carry the potential of exemplary or additional damages. *Internat'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 584 (Tex. 1963) (fraud and civil conspiracy); *Brosseau v. Ranzau*, 81 S.W.3d 381, 396-97 (Tex. App.—Beaumont 2002, pet. denied) (breach of fiduciary duty); Tex. Civ. Prac. & Rem. Code § 41.003(a)(1) (common law fraud, malice, and gross negligence); Tex. Bus. & Comm. Code § 17.50(b)(1) (intentional violation of DTPA).

There is no question that punitive or exemplary damages are included in calculating the amount in controversy. *Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240-41 (1943); *Dow Agrosciences LLC v. Bates*, 332 F.3d 323, 326 n.3 (5th Cir. 2003), *vacated on other grounds*, 544 U.S. 431 (2005); *Huber, supra* at 244. Likewise, statutory attorney's fees (available under the DTPA and for a breach of contract action) are included in the calculation of the amount. *Missouri State Life Ins. Co. v. Jones*, 290

U.S. 199, 202 (1933); *Foret v. Southern Farm Bureau Life Ins. Co*., 918 F.2d 534, 537 (5th Cir. 1990).

### 2. Plaintiffs' Theories Support the Amount-In-Controversy Requirement.

Plaintiffs contend that they should be treated as presumptively suffering from silicosis based on the diagnosis of the medical professionals Defendants selected, meaning that they should be considered eligible for any available recovery from wrongdoers who caused silicosis at the rates available to silicosis victims. D.E. 1, pp. 8-35. Alternatively, if they do not have silicosis and cannot recover as silicosis victims, they sue for damages that include mental anguish suffered as a result of being told that they had silicosis when, in fact, they did not have the disease. *Id.* at 35-48. Plaintiffs may retain federal jurisdiction if either of their avenues for recovery states a claim in excess of $75,000 for each claimant. "Where a complaint proceeds on two alternative theories, only one of which satisfies the amount-in-controversy requirement, jurisdiction has been sustained." *Bankers Life & Cas. Co. v. Namie*, 341 F.2d 187, 189 n.2 (5th Cir. 1965).

### a. The Non-Silicosis Track

Defendants have posed detailed challenges to the amount in controversy under the first scenario in which the Plaintiffs are silicosis sufferers. In contrast, Defendants have not squarely addressed the second scenario in which Defendants are alleged to have intentionally misled Plaintiffs into believing that they have a life-threatening disease.

Addressing the second scenario first, the Plaintiffs have alleged the following with respect to damages:

- After being told of their incurable silicosis diagnosis, Plaintiffs prepared for the worst.  D.E. 1, p. 36.

- Plaintiffs suffered severe mental anguish and distress.  *Id.*

- Many Plaintiffs became depressed and mentally distraught. *Id.*

- Plaintiffs were unable to live their normal lives without the thought of impending doom, including a decline through a crippling disease with as little as two years to live.  *Id.* at 37, 43-44.

- Plaintiffs suffered fright, horror, mental breakdowns, worry, and stress that no reasonable person could expect to endure without undergoing unreasonable suffering.  *Id.* at 44-45.

- They became distant from family and friends.  *Id.* at 37.

- Many made funeral arrangements.  *Id.*

- Many were unable to obtain health or life insurance.  *Id.*

- Defendants generated approximately $30 million in attorney's fees and hundreds of thousands in medical fees at the expense of the Plaintiffs' well-being.  *Id.* at 40.

- Plaintiffs are entitled to treble damages and attorney's fees pursuant to the DTPA.  *Id.* at 42-43.

- Plaintiffs are entitled to punitive damages without statutory limit. *Id.* at 45.

To exceed the statutory cap on punitive damages even if no economic damages are shown, Plaintiffs are pleading damages exceeding $200,000.  Tex. Civ. Prac. & Rem. Code § 41.008 ($200,000 is the statutory cap where there are no economic damages and noneconomic damages are less than that amount).  Under the DTPA provisions allowing treble damages, each Plaintiff's compensatory damages—including mental anguish

damages—must be approximately \$13,500 or more[3] to come within federal jurisdiction once added to a 40% contingent attorney's fee.  Tex. Bus. & Comm. Code § 17.50(b)(1). Defendants have not suggested that Plaintiffs are, as a matter of law, ineligible for any of these remedies or that their allegations are not made in good faith.

It is not unusual for courts to find such allegations sufficient to establish the amount-in-controversy for diversity jurisdiction.   The Fifth Circuit has held that allegations of mental anguish and punitive damages in unspecified amounts can satisfy the required threshold.  *In re 1994 Exxon Chemical Fire*, 558 F.3d 378, 387-88 (5th Cir. 2009).  In the *Exxon Chemical Fire* case, the amount-in-controversy requirement was met by pleading individual and familial suffering, injuries to physical and mental health, including emotional distress and mental anguish from the knowledge of exposure to a hazardous substance, expenses incurred by reason of illness caused by the nuisance, fear and apprehension of further exposure to, and impact from, hazardous chemicals, economic and financial harm, loss of enjoyment of life and peaceful use of property, and, other consequential, incidental, general, and special damages as well as punitive damages.

In *Dean v. Accenture Federal Services, LLC*, 2011 WL 6355298, *3 (W.D. Tex. Dec. 19, 2011), the plaintiff sued for disability discrimination and retaliation in his employment.  He did not ask for economic damages, but did plead for mental pain and anguish, inconvenience, emotional pain and suffering, and loss of enjoyment of life,

---

[3]   To determine what compensatory damages plus treble (or punitive) damages plus a 40% contingency fee would amount to \$75,000 a simple mathematical equation reveals the answer.  Where "X" is compensatory damages, the formula would be:  $X + 3X + 4X(.40) > \$75,000$.  $X = \sim\$13,500$.

along with attorney's fees.  The court held that those allegations were sufficient to satisfy the amount in controversy.  *Id.* (the factual allegations included that the plaintiff had been hospitalized and medically treated for his mental issues).  *See also*, *Whitmire v. Bank One, N.A.*, No. Civ. A. H–05–3732, 2005 WL 3465726, at *3 (S.D. Tex. Dec. 16, 2005) (economic damages of $15,370.50, together with unspecified mental anguish, treble damages, and attorney's fees, revealed an amount in controversy over $75,000).

Defendants have not argued that, to a legal certainty, Plaintiffs cannot each prove damages exceeding $75,000 on their individual claims for mental anguish, punitive damages, and attorney's fees.  The Court holds that a compensatory damage figure of $13,500 is supported by the facts alleged and that, when added to potential treble damages or exemplary damages and attorney's fees, could exceed $75,000.  Because the Plaintiffs can meet their amount-in-controversy requirement on one of two alternate theories, diversity jurisdiction has attached and the Court DENIES the motions in that respect.

### b.    The Silicosis Track

Additionally, Plaintiffs have demonstrated that their pleadings trigger the necessary amount in controversy on their first theory in which they are afflicted with silicosis and were entitled to payment from certain settlement funds or from silicosis defendants.  They have pled the following with respect to their damages:

- Plaintiffs were charged $650 for "free" silicosis screening.  D.E. 1, p. 11.

- Defendants were mandated to withdraw from all cases referred by N&M, so any fees and expenses on those cases should be disgorged to Plaintiffs.  *Id.*, pp. 11-12.

- There was a total of $55 million in global settlements with Moldex, 3M, Air Liquide, Halliburton, and Clemtex.  D.E. 1, p. 13.  Defendants wrongfully retained the funds for their own use and caused Plaintiffs to incur unnecessary interest and costs.  *Id.*

- Defendants charged 3% "general" expenses without proper authorization, including expenses incurred in the unrelated Mississippi litigation.  *Id.* at 14.  A "huge" number of those expenses were client-specific, but were improperly billed to the general expense line item.  *Id.* at 15.

- Overhead in the form of a $60,000 database was charged to clients, even though it was never used on the cases.  *Id.* at 15.

- Excessive travel expenses, including first class airfare, private jet expenses, expensive dinners, alcohol, and cigars, and additional days of travel expenses over and above the days needed for litigation activities were billed to the clients.  *Id.* at 16.

- Clients were charged for expert witnesses with up-front fees of $20,000, when the witnesses were not qualified to render useful opinions and, in fact, did not contribute to any settlement.  *Id.* at 16.

- Defendants caused clients to release related claims that would have entitled them to higher amounts in settlements.  *Id.* at 16-17.

- Defendants entered into an improper aggregate settlement with 3M for $26 million.  *Id.* at 17.

- Defendants caused claims to be dismissed before settlements were executed for clients that may include Plaintiffs.  *Id.* at 17.

- Plaintiffs' cases were lost by Defendants failing to respond to silicosis defendants' motions for summary judgment.  *Id.* at 17-18.

- Defendants caused Plaintiffs to lose the settlement with Sanstorm (a/k/a Air Liquide) for $5.25 million due to a failure to process the settlements.  *Id.* at 18.

- Defendants caused Plaintiffs to lose the settlement with Moldex for $2.25 million for failure to timely process it.  *Id.* at 18-19.

- Defendants caused Plaintiffs to lose bankruptcy claims against Halliburton for failure to timely file the claims.  *Id.* at 19.

- Sanctions awarded to the silicosis defendants from counsel were billed to the Plaintiffs as litigation expenses.  *Id*. at 20.

- Fees and expenses that were returned by withdrawing attorneys were not refunded to Plaintiffs in a timely manner.  *Id*. at 20.

- Claim amounts that had been withheld by the bankruptcy court in the Halliburton case were retained and not timely refunded by Defendants to Plaintiffs.  *Id*. at 21.

- Plaintiffs seek treble damages and attorney's fees pursuant to the DTPA.  *Id*. at 32.

- Plaintiffs seek punitive and/or exemplary damages without any statutory limit.  *Id*. at 34.

Other than complaining of Plaintiffs' "vague generalities" (D.E. 20, p. 14), Defendants' challenge to these allegations is based upon a mathematical view of an isolated recitation of damages:  the $55 million total settlements figure.  Defendants, noting that they represented 3,000 claimants, suggest that the average recovery ($18,333) is insufficient to meet the jurisdictional requirement.  Accepting the Defendants' methodology and as demonstrated above, that amount of economic damages, combined with treble or punitive damages[4] and attorney's fees would certainly meet the $75,000 threshold.  Thus Defendants' mathematical perspective has not demonstrated that the Plaintiffs as a matter of law cannot reach the required amount in controversy.

While attorney's fees must be available by statute or contract in order to be included in the amount-in-controversy calculation,[5] Plaintiffs have alleged breach of contract and DTPA causes of action, both of which include statutory recovery of

---

[4]   Exemplaries must bear some relationship to compensatories.  However, no set rule or ratio exists to determine an amount over which the award cannot go.  *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex. 1981).  A one-to-three ratio is well within a justifiable relationship.

[5] *Foret, supra* at 537.

attorney's fees.  Tex. Civ. Prac. & Rem. Code § 38.001; Tex. Bus. & Comm. Code § 17.50(d).  Defendants dispute the right of Plaintiffs' to include attorney's fees in this action because they did not comply with the presentment requirements of the statutes governing the award of those fees.  *See* Tex. Civ. Prac. & Rem. Code § 38.002; Tex. Bus. & Comm. Code § 17.505(a).

Neither of the presentment requirements permanently precludes the award of attorney's fees under the respective statutes if the lawsuit is filed prior to presentment. With respect to a contract action, "There is no requirement in the statute that the demand for payment be made prior to the time suit is filed."  *Palestine Water Well Services, Inc. v. Vance Sand & Rock, Inc*., 188 S.W.3d 321, 327 (Tex. App.–Tyler 2006, no pet.) (citing *Gateley v. Humphrey*, 151 Tex. 588, 591, 254 S.W.2d 98, 100 (1952) (interpreting the predecessor statute); *Stuckey v. White*, 647 S.W.2d 35, 38 (Tex. App.—Houston [1st Dist.] 1982, no writ) (There is no requirement that a presentment for claim must be made prior to the time suit is filed to recover attorney's fees, only that the claim is not paid within 30 days once demand is made.)).

Likewise, under the DTPA, the same statute creating the presentment requirement includes a remedy if the suit is filed before presentment.  DTPA, Tex. Bus. & Comm. Code § 17.505(d).  That remedy is abatement until the 60th day after the Plaintiff makes the required presentment.  DTPA § 17.505(e).  All of the Defendants except Michael J. Lowenberg have filed a plea in abatement.  D.E. 20, p. 30; D.E. 21, p. 1; D.E. 30, p. 2; D.E. 35, p. 34; D.E. 38, p. 35.  Because the pleas in abatement are not verified, this action

was not subject to automatic abatement and the matter will be addressed below.  DTPA §
17.505(d).

The Court DENIES the motions to the extent that they challenge the amount in
controversy with respect to the silicosis track.

### c.    Plaintiff-Specificity

While the Court has found that a facial review of the pleadings shows that they
satisfy the amount-in-controversy requirement as to "each Plaintiff," Defendants assert
that Plaintiffs should have to show with particularity how each of them actually qualifies
for each of the remedies that they pled.  That requires looking beyond the pleading.  The
parties agree that a review of summary judgment-type evidence is appropriate to make
this determination.  *Hartford Ins. Group v. Lou-Con, Inc*., 293 F.3d 908, 910 (5th Cir.
2002) (*per curiam*); *Manguno v. Prudential Property & Casualty Ins. Co*., 276 F.3d 720,
723 (5th Cir. 2002).

Plaintiffs offer their Exhibits 8 and 9 to show some evidence of the amount in
controversy for each Plaintiff.  The spreadsheet, Exhibit 8, sets out the amount of missed
settlements, the amount of fees and expenses to be disgorged, and interest as damages on
those amounts.   The lowest sum was $10,550.58.   It cannot be said that, to a legal
certainty, a claim of that amount could not support an exemplary damage award and/or
attorney's fees that would exceed $75,000 under the allegations in this case.

The only reply that was filed offers two complaints with respect to Plaintiffs'
Exhibit 8.  D.E. 37, p. 18.  First, it simply disagrees that the sums listed are sufficient to
support total damages exceeding $75,000 already discussed above.  Second, it argues that

the description of damages is still too vague and greater specificity in the pleading should be ordered.   The Court finds that the amount of specificity offered by Plaintiffs at this point is sufficient to satisfy the jurisdictional requirements.   The Court DENIES the motions to dismiss based on an insufficient amount in controversy.

## II. Rule 12(b)(7) Failure to Join Indispensable Parties

Next, Defendants seek a Rule 12(b)(7) dismissal because allegedly indispensable non-diverse parties must be joined and would therefore destroy jurisdiction.   Rule 12(b)(7) refers to Rule 19 for determining whether a party is indispensable.   Such a party is one whose presence in the lawsuit is required for the fair and complete resolution of the dispute.   *HS Resources, Inc. v. Wingate*, 327 F.3d 432, 438 (5th Cir. 2003).   The burden of proof on this issue lies with the Defendants as movants.   *Abbott v. BP Exploration & Production Inc*., 781 F.Supp.2d 453, 461 (S.D. Tex. 2011).   Elements of proof are:  (1) the absent party is required for the suit to proceed; (2) that party cannot be joined; and (3) the suit cannot proceed in equity and good conscience without the absent party.   Fed. R. Civ. P. 19(a), (b).

Indispensability involves prejudice to existing parties if the other party is not joined, adequacy of relief if awarded against existing parties, and whether the plaintiff would be left without an adequate remedy if the action is dismissed for nonjoinder.   Fed. R. Civ. P. 19(b).   To be an adequate judgment, it must settle the subject dispute in its entirety.   *Republic of Philippines v. Pimentel*, 553 U.S. 851, 870, 128 S.Ct. 2180, 2193 (2008).   Defendants suggest that Stacie Taylor and the law firm, Grenfell, Sledge & Stevens (GSS), are indispensable parties because they signed up the Plaintiffs to

prosecute the silicosis claims, referred the Plaintiffs to the Defendants, shared responsibility for the prosecution of the Plaintiffs' claims against silicosis defendants, and shared in attorney's fees and expenses that are the subject of Plaintiffs' disgorgement claims. These contentions raise two indispensability arguments: (1) status as a joint tortfeasor; and (2) possession of a fund against which Plaintiffs state a claim.

### A. Joint Tortfeasors are Not Indispensable

Merely being a joint tortfeasor is not enough to make a party indispensable. "It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." *Temple v. Synthes Corp., Ltd*., 498 U.S. 5, 7, 111 S.Ct. 315, 316 (1990). "The Advisory Committee Notes to Rule 19(a) explicitly state that 'a tortfeasor with the usual "joint-and-several" liability is merely a permissive party to an action against another with like liability.' " *Id*. The fact that the existing Defendants may have some right of reimbursement, contribution, or indemnity against a non-party does not make the non-party indispensable. *E.g*., *Nottingham v. General American Communications Corp*., 811 F.2d 873, 880 (5th Cir.), *cert. denied*, 484 U.S. 854, 108 S.Ct. 158 (1987); *Bank of America Nat'l Trust & Savings Ass'n v. Hotel Rittenhouse Associates*, 844 F.2d 1050, 1054 (3d Cir. 1988).

Defendants argue that the Fifth Circuit has established an exception to the joint tortfeasor rule for parties who are "active participants" in the matters at issue. D.E. 20, p. 8. They refer to *Haas v. Jefferson Nat'l Bank*, 442 F.2d 394, 398 (5th Cir. 1971). *See also Payan v. Continental Tire N.A., Inc*., 232 F.R.D. 587, 589 (S.D.Tex. 2005). In *Haas*, the plaintiff sued to enforce his interest in bank shares that, by agreement, had been

issued in Glueck's name.  When Haas sought to have shares representing his ownership interest re-issued in his own name, the bank allegedly refused to do so because it claimed a security interest in the shares related to Glueck's indebtedness to the bank.  The bank did this despite allegedly knowing that one-half of the shares were owned by Haas.

Glueck was deemed an indispensable party because he was involved in key issues, including holding the shares in his own name, granting a security interest in the shares despite Haas' ownership interest, requesting reissuance and then withdrawing that request when the bank made its claim to the shares, and then pledging the shares to another bank. *Haas, supra* at 395-98.  The bank's liability to Haas could not be determined without determining who actually owned the shares.  Thus the *Haas* opinion turns on the "adjudication of rights to a *res*" concept rather than creating an exception to the joint tortfeasor rule of dispensability.  As will be discussed further below, this case does not involve the adjudication of a *res* as required to make Stacie Taylor or GSS indispensable parties.

Defendants' argument that Stacie Taylor was an "active participant" who is an indispensable party further points to Plaintiffs' allegations of conspiracy based in part on the element of a meeting of the minds between Taylor and other Defendants. *Tri v. J.J.T.*, 162 S.W.3d 552, 556 (Tex. 2005).  Given that the Complaint has not been amended since the voluntary dismissal of Taylor, it is questionable whether Plaintiffs intend to prosecute their conspiracy claim.  The Court therefore ORDERS Plaintiffs to amend their Complaint to clarify the claims being made against the remaining parties. The Court DENIES the motion with respect to this issue without prejudice to re-assert the

claim that Taylor is an indispensable party with respect to any civil conspiracy alleged to involve her if such a claim remains after the Plaintiffs file their amended complaint.

### B.  Indispensability Based on Multiple Claims to a *Res* Does Not Apply.

Defendants claim that Taylor and GSS are indispensable parties because they have shared in the same fund of fees and expenses sought to be disgorged and because GSS is currently making a claim to settlement proceeds from a single fund or *res*, citing *New England Mutual Life Ins. Co. v. Brandenburg*, 8 F.R.D. 151, 154 (S.D.N.Y. 1948). Noting that dismissal for failure to join indispensable parties is disfavored, the *Brandenburg* court stated, "Even where there is a single fund or *res*, the court will 'strain hard' to find interests to be separable so that an action need not be dismissed."  *Id.*

There is no applicable *res* with rights being adjudicated by this Court.  The identified *res* is the Estate of John M. O'Quinn, Deceased.  That is the subject of other proceedings.  This case will only determine whether the Plaintiffs have a money judgment in a liquidated amount that will support a claim in the probate case.  Therefore, any claim to a common fund is not present in this case and does not create indispensable party status.

Defendants recite that they have the right to be safe from needless multiple litigation and incurring avoidable inconsistent obligations, citing *Schutten v. Shell Oil Co.*, 421 F.2d 869, 873 (5th Cir. 1970).  *Schutten* involved an eviction of Shell Oil from a parcel of realty and an accounting of minerals removed from that parcel.  Consequently, there was a single *res* to be adjudicated, with multiple claimants needing to participate in order to dispose of the rights to the *res* in an orderly manner.  Here, the multiple Plaintiffs

(as well as other claimants in other cases) all seek money judgments against the Defendants that in some respects will be subject to collection against a single *res*. The fact that money judgment creditors will have to compete against other creditors to satisfy their claims against a single debtor's assets does not trigger indispensable party status in this case.

To be a necessary and indispensable party, that party must have interests that they are unable to protect if the case goes forward without them. *MasterCard Int'l, Inc. v. Visa Int'l Service Ass'n, Inc*., 471 F.3d 377, 387 (2d Cir. 2006). Some interest and some adverse effect is insufficient. *Id*. Local counsel were not considered necessary parties in *Huber v. Taylor*, 532 F.3d 237 (3d Cir. 2008). It simply is not necessary to name all joint tortfeasors in a single lawsuit. *Temple v. Synthes Corp*., *supra*. The Court DENIES the motion with respect to the contention that Taylor and GSS are indispensable parties because of conflicting claims to a *res*.

### III.    Rule 12(b)(1) Abstention

Defendants claim, and it is undisputed, that another court has been probating the *Estate of John M. O'Quinn, Deceased* in Cause No. 392,247 in Probate Court No. 2 of Harris County, Texas for the last two years and that same court has been adjudicating a "mirror-image" lawsuit there under the style *House v. The O'Quinn Firm*, Cause No. 392,247-404. D.E. 20, p. 2. Defendants suggest that the interests of judicial economy require abstention so that the Plaintiffs in the instant case can be required to join in the other case where the same or similar issues are being, or will be, tried against the same Defendants by the same counsel. Defendants argue that the *House* case has already

completed a great deal of discovery and that preliminary rulings made in that case may subject the Defendants to "potentially different and inconsistent results" if this case proceeds in federal court.  D.E. 20, p. 18.

Defendants argue for the application of *Colorado River* abstention.  *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236 (1976); *Brown v. Pacific Life Ins. Co.*, 462 F.3d 384, 394 (5th Cir. 2006).  The *Colorado River* abstention doctrine is based upon considerations of "(w)ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200, 203 (1952)).  There, the Supreme Court allowed for federal abstention in a water rights case when there were already three concurrent state court cases pending between the same parties.

Acknowledging that a federal court has an "unflagging obligation" to exercise the jurisdiction given it, the Court allowed for abstention in very limited and "exceptional circumstances."  *Colorado River*, 424 U.S. 817-18.  "Only the clearest of justifications will warrant dismissal."  *Id*. at 819.  Courts evaluating a request for *Colorado River* abstention must be satisfied that (1) there is a parallel proceeding pending in state court and (2) "exceptional circumstances" warrant abstention.  *RepublicBank Dallas, N.A. v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir. 1987); *Kelly Investment Inc. v. Continental Common Corp.*, 315 F.3d 494, 497 (5th Cir. 2002).

### A. The Proceedings Are Not Parallel

To be parallel, the proceedings must involve the same issues and the same parties. *RepublicBank, supra*; *American Guarantee & Liability Ins. Co. v. Anco Insulations, Inc.*, 408 F.3d 248, 251-52 (5th Cir. 2005).  *Colorado River* does not suggest that a court abstain from adjudicating the only proceeding pending between the parties that are named in the federal action.  Instead, the nature of this form of abstention is to defer to an existing state court proceeding already involving the same parties.  Here, no existing state court proceeding is pending between these parties.  While similar issues are being advanced by Plaintiffs' *counsel* against the same defendants in the probate court on behalf of other clients with other underlying claims, these *Plaintiffs* are not parties to the *House* case.  Thus *Colorado River* abstention fails on the first element of "parallel proceedings."

Defendants argue that the Fifth Circuit embraces flexibility in the parallelism requirement, suggesting that it would approve of abstention here, even though the Plaintiffs are different parties.  *Allen v. Louisiana State Board of Dentistry*, 835 F.2d 100, 104 (5th Cir. 1988); *Wright v. Spindletop Films, LLC*, 845 F. Supp. 2d 783, 788 (S.D. Tex. 2012).  In both *Allen* and *Wright*, the parties were identical.  The only "flexibility" tolerated was in the issues.

The *Wright* court relied upon *RepublicBank* for its representation that the parallelism requirement was a flexible one.  The argument there was that a limited partnership was sued in one case and the general partners of that limited partnership were

sued on the same debt in the other.  But *RepublicBank* rejected the proposition that the parties and issues were sufficiently identical:

> It is true that the general subject matter of the two actions is the same, and that the validity of the promissory note is a common issue between them.  The other issues are disparate, however, and the parties are not the same.  The appellee bank sued only the limited partnership in Oklahoma, and an issue there is the enforceability of the mortgage.  In our case, the guarantors are parties and the guaranty agreement is at issue.

*RepublicBank, supra* at 1121.   The identity of parties required by the parallelism requirement is not so loose as to overlook the fact that these Plaintiffs are neither parties nor represented by the parties in the pending state court action.

Defendants quote at length from the opinion in *Arkwright-Boston Manufacturers Mutual Ins. Co. v. City of New York*, 762 F.2d 205 (2d Cir. 1985).  D.E. 37, p. 8. However, that was a case in which multiple plaintiffs sought damages for a single electrical blackout.  Here, in contrast, there are at least two groups of Plaintiffs whose underlying cases were tried in separate proceedings and who may have different variations in the facts relevant to their contracts, their underlying lawsuits, and their respective interactions with the Defendants.

Defendants also rely on *Forest v. The Gas Co.*, No. 08-00374, 2008 WL 4657833 (D. Hawaii Oct. 20, 2008).  In *Forest*, three family members were killed in an automobile accident.  A fourth was injured, but survived.  The federal court, based on *Colorado River*, stayed the wrongful death case brought in the name of one decedent in deference to a state proceeding brought by the survivor against the same defendant for personal injuries.  While there is a much closer degree of parallelism in that case than we have

here, it is noteworthy that the federal district court in *Forest* did not dismiss its case but only stayed it in the event that the state court proceedings could proceed and perhaps reduce the number of issues that would have to be tried in federal court.

Defendants assert that the Plaintiffs here are different "in name only" from those who are litigating in the state probate court. They claim that "a maze of lawsuits" "fracturing identical claims into multiple proceedings" is unjust. They suggest that Plaintiffs are fighting abstention because proceeding separately is a win-win situation for them: they will argue that they are not bound by any adverse ruling in the probate court because they were not present and not represented but that they will seek an offensive use of collateral estoppel based on Probate Court rulings if they are favorable to Plaintiffs. *See Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714 (Tex. 1990) (offensive use of collateral estoppel in the context of different plaintiffs but same defendants).[6]

Defendants' concern regarding the application of collateral estoppel does not override the Plaintiffs' right to proceed in the forum of their choice. To make offensive use of collateral estoppel, Plaintiffs will have to comply with the requirements of that doctrine. If the law permits it, it is not a reason to abstain. And nothing about that doctrine nullifies the requirement that this Court comply with the Plaintiffs' legitimate invocation of this Court's jurisdiction. *See generally*, *Colorado River*, 424 U.S. at 817-18 (obligation to exercise federal jurisdiction); *Snap-On Tools Corp. v. Mason*, 18 F.3d 1261, 1267-68 (5th Cir. 1994) (deference to a plaintiff's choice of state or federal forum).

---

[6]   Plaintiffs assert that the state court proceeding will have no preclusive effect on this proceeding, citing *Lumen Construction, Inc. v. Brant Construction Co.*, 780 F.2d 691, 695 (7th Cir. 1985). Until a ripe dispute is presented to this Court, no decision may be made as to whether a state court decision is binding in this Court.

The Plaintiffs in this case are not subject to any other court proceeding involving their claims.  Without a pending parallel proceeding, the first requirement for *Colorado River* abstention is absent and the motion to abstain is DENIED.

### B.  Exceptional Circumstances Do Not Exist

Under the second requirement for *Colorado River* abstention, there are six factors that a District Court may balance in the exercise of its discretion in determining whether "exceptional circumstances" call upon the court to decline to exercise federal jurisdiction when parallel state proceedings have been commenced.  *Brown, supra*.  The weighing of these factors should be balanced heavily in favor of the exercise of jurisdiction.  *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 16 (1983); *Black Sea Investment, Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650 (5th Cir. 2000).  Thus "neutral" factors may be considered to weigh against abstention.  *See Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 738-39 (5th Cir. 1999).  Each factor will be discussed in turn.

### 1.  Jurisdiction over a *Res*

First is the state court's assumption of jurisdiction over a *res*.  Here, Defendants argue that the state probate court's jurisdiction over the *Estate of John M. O'Quinn, Deceased*, is a reason for deferring to the state court.  They also argue that a claim of equitable ownership of specific funds (disgorgement of fees) supplies such a *res*.  Yet the "*res*" at issue in *Colorado River* is a non-fungible property that is the actual subject of the suit, as in a property title dispute.  *E.g.*, *Wells Fargo Century, Inc. v. Hanakis*, No. 04CV1381, 2005 WL 1523788, 2005 U.S. Dist. LEXIS 17440, *10 n.3 (E.D.N.Y. June 28, 2005).  Here, the O'Quinn estate is merely one pool of resources available to the

Plaintiffs in the event they obtain a judgment upon which they may execute.  Moreover, the John M. O'Quinn Estate represents only one set of Defendants subject to the Plaintiffs' claims.

The federal courts have long recognized a probate exception to the exercise of diversity jurisdiction.  *E.g., Markham v. Allen*, 326 U.S. 490, 494, 66 S.Ct. 296 (1946).  However, the exception is sparingly applied.  Federal courts are encouraged to exercise their jurisdiction when doing so merely establishes a claim that is to be placed in line with other claims in the probate proceeding—without any attempt to actually dispose of the probate property or interfere with the will, both of which matters remain in the probate court's jurisdiction.  *Marshall v. Marshall*, 547 U.S. 293, 311-12, 126 S.Ct. 1735 (2006).  The first factor weighs against abstention.

### 2. Forum Convenience

Second is whether the federal forum is relatively inconvenient.  Defendants argue that the state proceedings, pending in Houston, are more convenient for the parties, witnesses, and counsel.  In this regard, Defendants recite that discovery has been conducted in Houston and would again need to be conducted in Houston.  The fact that this case is pending in Corpus Christi would not make Houston-based discovery less convenient, as the discovery can take place anywhere and Houston (Harris County) remains within the territorial jurisdiction of this District.  28 U.S.C. § 124(b).  More importantly, the Fifth Circuit has held that the existence of concurrent proceedings and a resulting duplication of certain pre-trial and trial matters does not affect the "inconvenience" factor of *Colorado River*.  *Kelly, supra* at 498.

The Executor, anticipating a three- to four-week trial, complains of the inconvenience of this forum for out-of-town defendants and witnesses. There is no evidence accompanying the Executor's Motion or any of the Defendants' motions to dismiss that demonstrates the identity of the witnesses involved, their location, or the extent of inconvenience presented by this forum. The second factor weighs against abstention.

### 3. Piecemeal Litigation

Third is the avoidance of piecemeal litigation. Defendants argue that the state court has already transferred several hundred similar cases to its court, including claimants from Corpus Christi who previously had claims pending in Nueces County, Texas, where this Court sits. The probate court has heard many of the issues that will arise and, Defendants argue, this Court should abstain to avoid inconsistency resulting from piecemeal litigation. They rely on two Fifth Circuit cases, *Black Sea, supra*; and *LAC Real Estate Holdings, LLC v. Biloxi Marsh Lands Corp*., 320 Fed. Appx. 267 (5th Cir. 2009), as well as two district court cases in other jurisdictions. The Fifth Circuit cases establish the parameters for this Court's analysis.

The substance of Defendants' complaints under the "piecemeal litigation" category are actually complaints that there will be duplicative litigation regarding multiple claimants with the same or similar complaints. As the *Black Sea* opinion explained:

> *Duplicative* litigation, wasteful though it may be, is a necessary cost of our nation's maintenance of two separate and distinct judicial systems possessed of frequently

> overlapping jurisdiction.  The real concern at the heart of the third *Colorado River* factor is the avoidance of piecemeal litigation, and the concomitant danger of inconsistent rulings with respect to a piece of property.  When, as here, no court has assumed jurisdiction over a disputed *res*, there is no such danger.

*Black Sea, supra* at 650-51 (emphasis in original; footnote omitted).  The Fifth Circuit has been quite consistent in this approach.  When the claims are merely duplicative, there is no "piecemeal litigation" warranting abstention.  *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1192 (5th Cir. 1988); *Kelly, supra* at 498.  When there is a dispute among claimants to a single *res*, abstention is proper.  *LAC Real Estate Holdings, supra* (addressing gas royalties on a parcel of marsh land).

Defendants endorse the state court's sample claimant trial plan, which they claim has, through appropriate use of its schedule, framed appellate issues and disposed of 131 cases to date.  D.E. 21, p. 2.  That plan involves selecting certain claimants to try their claims in advance of the remaining claims.  The state court's consolidation and then re-fracturing of cases for trial is no argument in favor of abstention here.  The third factor weighs against abstention.

### 4.  Order of Jurisdiction

Fourth is the order in which jurisdiction was obtained by the courts.  Clearly, the *House* state court proceeding has been pending much longer than the instant case.  However, at no time has the state court proceeding encompassed jurisdiction over these Plaintiffs and their claims.  If this Court were to abstain, then the Plaintiffs would have to file new claims in state court.  Therefore, the probate court's proceeding should not be

treated as a "first filed" proceeding in the *Colorado River* analysis. *Kelly, supra* at 499. The fourth factor weighs against abstention.

### 5.  Federal or State Rule of Decision

Fifth is whether and to what extent federal law provides the rule of decision on the merits.  Defendants argue that Plaintiffs have alleged state law claims and that the O'Quinn contract provides that it be construed under and in accordance with the laws of the State of Texas.  This argument is not disputed.  However, the presence of state law questions is less weighty in the abstention analysis when the applicable state law is well-settled, as it is here.  *Colorado River*, 424 U.S. at 815.  This factor weighs slightly in favor of abstention.

### 6.  Protection of Rights

Sixth is the adequacy of the state proceedings to protect the rights of the party invoking federal jurisdiction—the Plaintiffs here.  Defendants claim that the Probate Court is available for the Plaintiffs' claims.  Yet this presupposes that the Plaintiffs will be permitted to join the state proceeding at this juncture and that their rights will not be adversely affected by the fact that the state court has made certain decisions affecting the cases without Plaintiffs being represented.

The arguments of Defendants suggest that discovery issues, trial logistics, and even appellate issues have already been determined in that case and there is no indication that any would be reconsidered upon Plaintiffs' joinder.  The Executor of the Estate of John M. O'Quinn, Deceased, in separate briefing, also argues for deference to the Texas probate court because O'Quinn's Last Will and Testament provides certain defenses to

28 / 35

the Plaintiffs' claims.   D.E. 21, p. 2.   This argument actually counsels against the adequacy of the state court to protect the Plaintiffs' rights as it appears to be an effort to gain an advantage for some of the Defendants.

The Fifth Circuit has observed that the ability to redress rights in a state forum, by itself does not weigh in favor of abstention.   At best, it is only neutral.   *Evanston Ins. Co.*, *supra* at 1193.   Here, the sixth factor weighs against abstention.

### C.  Abstention is Not Warranted

The mere fact that a state court proceeding is pending does not bar federal proceedings regarding the same matter in a federal court with jurisdiction.   *Moses H. Cone Memorial Hosp., supra* at 15.   "The crevice in federal jurisdiction that *Colorado River* carved is a narrow one.   Of all the abstention doctrines, it is to be approached with the most caution . . . ."   *Jimenez v. Rodriguez-Pagan*, 597 F.3d 18, 27 (1st Cir. 2010). With only one factor of six weighing in favor of abstention, and then only slightly, the Court DENIES the motions to abstain.

### IV.  Rule 12(e) Request for More Definite Statement

Defendants seek an order requiring a more definite statement because the pleadings are so vague or ambiguous that they cannot reasonably be required to form a responsive pleading.   D.E. 20, p. 23 (quoting Rule 12(e)).   This complaint initially targets Plaintiffs' fraud pleadings, discussed below.   *Id*. at 24.   Also at issue are the damages pleadings, the allegations as to specific individual conduct for which the O'Quinn defendants are charged with vicarious responsibility, and "shotgun" pleadings that incorporate antecedent allegations by reference into new allegations.

A more definite statement under Rule 12(e) is required when the pleading is so vague or unintelligible that the defendant cannot adequately plead in response. *Mitchell v. E-Z Way Towers, Inc*., 269 F.2d 126, 131-32 (5th Cir. 1959)

> Rule 8(a) of the Federal Rules of Civil Procedure requires a short and plain statement of the claim showing that the plaintiff is entitled to relief. Pursuant to Rule 8(a), a complaint will be deemed inadequate only if it fails to (1) provide notice of circumstances which give rise to the claim, or (2) set forth sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist. *See General Star Indemnity, Co. v. Vesta Fire Ins., Corp.,* 173 F.3d 946, 950. (5th Cir.1999).

*Beanal v. Freeport-McMoran, Inc*., 197 F.3d 161, 164 (5th Cir. 1999).  Rule 8 does not require exhaustion of all potential complaints or provide a specificity requirement that can substitute for discovery.  *Mitchell, supra* at 132.

With respect to damages, Defendants complain that the Plaintiffs allege in broad, conclusory terms that the combined amount in controversy exceeds $100,000.   As discussed above, the Court has found the allegations sufficient to sustain diversity jurisdiction and its amount-in-controversy requirement.   As a whole, the damages allegations outlined above, combined with the liability allegations, provide sufficient information to the Defendants to formulate an answer and to frame discovery.

With respect to vicarious liability, the Plaintiffs have named the individuals whose conduct is complained of.  In part IX of the Complaint, they state that they seek to impose vicarious liability through the doctrine of *respondeat superior* on any law firm operated by John M. O'Quinn for the conduct of its attorneys acting in the course and scope of their employment, including but not limited to O'Quinn, Laminack, Pirtle,

Martines, Steed, and Lowenberg.  D.E. 48.  The Plaintiffs' pleading is adequately specific as to both the "superior" and "inferior" parties at issue for their *respondeat superior* allegations.

With respect to "shotgun pleadings," Defendants cite a line of Eleventh Circuit cases:  *Liebman v. Deutshe Bank Nat'l Trust Co*., 462 Fed. Appx. 876, 879 (11th Cir. Feb. 23, 2012) ("The complaint named numerous individual defendants in addition to several business entities. The complaint alleged numerous violations of state and federal law, but did not provide any explanation of how the defendants' actions violated those laws. The Liebmans also failed to allege why the purported violations entitled them to their requested relief."); *Davis v. Coca-Cola Bottling Co. Consol*., 516 F.3d 955 (11th Cir. 2008) (multiple plaintiffs asserted same global discrimination, harassment, and retaliation claims against the defendant); *Wagner v. First Horizon Pharmaceutical Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006) (incorporation by reference followed by bare-bones statement of cause of action); *Anderson v. District Board of Trustees of Central Florida Community College*, 77 F.3d 364, 366 (11th Cir. 1996) ("[I]t is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.").

What makes a pleading a "shotgun" pleading is the inclusion of irrelevant and unrelated facts not tied to specific causes of action such that the claims made are indeterminate and the defendant's task in defending against them is significantly impaired.  *See e.g.*, *Abrams v. Ciba Specialty Chemicals Corp*., No. 08-0068, 2008 WL 4183344, 2008 U.S. Dist. LEXIS 68897, *26 (S.D. Ala. Sept. 10, 2008).  That is not the case here.

Plaintiffs have alleged sixteen pages of facts for their first set of causes of action, none of which appear to be or are identified as being irrelevant or unrelated. Then Plaintiffs refer to the various factual scenarios applicable to each cause of action in a shorthand form that specifically relates the relevant facts to each claim. Beginning at page 35 of their Complaint, Plaintiffs allege six pages of facts that apply to their alternative set of causes of action. Again, those facts are followed by counts that refer in shorthand to the factual allegations that apply to each claim. These are not objectionable "shotgun" pleadings and no additional detail is required to make them intelligible.

After thorough review of the Complaint, the Court DENIES the Defendants' motion for more definite statement.

## V. Rule 9(b) Adequacy of Fraud Pleadings

Federal Rules of Civil Procedure, Rule 9(b), requires that pleadings of fraud "state with particularity the circumstances constituting fraud." This heightened pleading requirement applies to claims that may be pled under other causes of action but which are based upon acts of fraud, such as certain DTPA claims—unless the application of fraud is disclaimed. *Lone Star Ladies Inv. Club v. Schlotzky's, Inc.*, 238 F.3d 363, 368 (5th Cir. 2001). The level of specificity generally includes identifying the statement considered fraudulent, the speaker, when and why the statements were made, and an explanation of why they are considered fraudulent. *Potkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

In particular, Defendants argue that allegations as to them as a group do not satisfy the pleading requirement, citing *Southland Securities Corp. v. InSpire Insurance*

*Solutions, Inc.*, 365 F.3d 353, 365 (5th Cir. 2004).  Yet, "Multiple defendants' conduct may be lumped together if the plaintiff's allegations elsewhere designate the nature of the defendants' relationship to a particular scheme and identify the defendants' role . . . ." *Bhatia v. Dischino*, No. 3:09–CV–1086–B, 2011 WL 3820825, 2011 U.S. Dist. LEXIS 97339, *12 (N.D. Tex. Aug. 29, 2011).  The required specificity varies with the context of the fraud claim.  *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).

The Court has reviewed the Plaintiffs' Complaint and finds that the pleadings related to fraud are sufficiently specific to satisfy Rule 9 and to apprise Defendants of the claims made against them.  The motions to dismiss or for more definite statement with respect to the fraud allegations are DENIED.

## VI.  Rule 12(f) Immaterial and Scandalous Allegations

Defendants seek an order striking "immaterial, impertinent, or scandalous" material pursuant to Fed. R. Civ. P. 12(f).  A motion to strike is only proper where the allegations to be stricken have no possible relation to the claims or causes of action.  *Augustus v. Board of Public Instruction*, 306 F.2d 862, 868 (5th Cir. 1962).  All doubts are resolved against striking the pleadings.  *Pan American Life Insurance Co. v. Blanco*, 311 F.2d 424, 428 n.13 (5th Cir. 1962).

Defendants do not identify any particular allegations as falling into those "immaterial, impertinent, or scandalous" categories.  To the extent that they complain that the allegations are too vague or incomplete to support the claims against them, the Court has already ruled against the Defendants.  By their motions, then, Defendants are essentially asking that the facially adequate pleadings against them be stricken because

the nature of the allegations are without merit and, as lacking merit, only besmirch their reputations.

This is not the type of argument that Rule 12(f) was intended to redress. The Rule protects a party from the prejudice of unnecessary pleadings. *See e.g.*, *S.E.C. v. Lorin*, 869 F.Supp. 1117, 1120 (S.D.N.Y. 1994). Given that the pleadings are required in order to give the Defendants notice of the claims made against them, they are neither unnecessary nor unduly prejudicial. Defendants' motions to strike the Plaintiffs' pleadings as immaterial, impertinent, or scandalous are DENIED.

## VII.   Plea in Abatement

It is undisputed that Plaintiffs did not provide Defendants with a 60-day pre-suit notification of their DTPA claims as required by DTPA § 17.505(a). Plaintiffs resist this requirement, asserting that the purpose of the abatement provision is to permit negotiation and settlement. *See Chaparral Texas, L.P. v. W. Dale Morris, Inc*., No. H-06-2468, 2007 WL 2455295, *5 (S.D. Tex. 2007); *Hines v. Hash*, 843 S.W.2d 464, 469 (Tex. 1992). Plaintiffs' argument continues that there is no prospect of an early settlement in this case as reflected by the Joint Report of Meeting and Joint Discovery Plan (D.E. 26, p. 10, para. 13).

The Court, convinced of the salutary purpose of the provision, GRANTS the Defendants' motions to abate.

## VIII.   Orders

For the reasons set out above, the Court ORDERS Plaintiffs to amend their Complaint on or before April 9, 2013 to eliminate all claims being dismissed pursuant to

the Plaintiffs' voluntary dismissals of any parties from this case.  The Court DENIES

WITHOUT PREJUDICE the Defendants' motions to dismiss for want of jurisdiction

based on the failure to join an indispensable party pending the Plaintiffs' timely

amendment of their Complaint.  The Court GRANTS the Defendants' plea in abatement

(with the exception of the other items herein ordered to be filed) and ORDERS the

Plaintiffs to provide the Defendants with the notice required by Tex. Bus. & Comm.

Code § 17.505(a) and ORDERS the Plaintiffs to file with the Court a one-sentence notice

stating, "Plaintiffs provided the DTPA § 17.505(a) notice to Defendants on _____"

filling in the blank with the date notice was given.  The Court ABATES this proceeding

until the sixty-first day following the date that the DTPA § 17.505(a) notice was given or

until further order of this Court.  The Court DENIES the remainder of the Defendants'

motions (D.E. 20, 21, 22, 30, 35, 38).

ORDERED this 1st day of April, 2013.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE