UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

FRANK BATES, *et al*,                    §
                                         §
          Plaintiffs,                    §
VS.                                      §          CIVIL ACTION NO. 2:12-CV-387
                                         §
RICHARD N LAMINACK, *et al*,             §
                                         §
          Defendants.                    §

## ORDER ON MOTIONS TO COMPEL ARBITRATION

Before the Court are two motions to compel arbitration (D.E. 60, 62) filed by the

O'Quinn Defendants[1] and Defendant T. Gerald Treece,[2] jointly referred to as "Movants."

Defendants Richard N. Laminack, Buffy Martines, and Thomas W. Pirtle filed a consent

to arbitration (D.E. 63), claiming that the arbitration agreement in the Power of Attorney

and Contingent Fee Contracts on which Movants rely apply equally to the claims made

against them because they are sued as employees of O'Quinn.  The remaining Defendant,

Abel Manji, also sued as an employee of O'Quinn, announced in open court on August

16, 2013 that, consistent with his Original Answer to Plaintiffs' First Amended

Complaint, he also consents to the referral of this matter to arbitration.  *See* D.E. 68, p. 5,

25.

---

[1]   John M. O'Quinn & Associates, PLLC d/b/a The O'Quinn Law Firm, John M. O'Quinn & Associates, L.L.P., John M. O'Quinn, P.C., and John M. O'Quinn Law Firm PLLC.

[2]   Independent Executor of the Estate of John M. O'Quinn, Deceased.

Plaintiffs filed a single response (D.E. 73) to both motions, including a footnote reference to the separate consent to arbitration, purporting to apply the arguments to the consenting Defendants as well.  Movants then filed a joint reply (D.E. 75), along with objections (D.E. 74) to Plaintiffs' evidence.  For the reasons set out below, the Motions (D.E. 60, 62) are GRANTED.

## WAIVER

Plaintiffs contend that arbitration has been waived by Defendants' invocation of the Court's jurisdiction to adjudicate previous motions that were filed without being made subject to any request to compel arbitration.  In particular, the record reflects the following relevant activity taking place over the first five months of this case prior to the subject motions to compel arbitration:

- January 18, 2013.  Defendants Richard N. Laminack, Buffy Martines, and Thomas W. Pirtle filed their respective Original Answers to Plaintiffs' Original Complaint (D.E. 12, 13, 14) admitting jurisdiction and venue and making no claims regarding arbitration.

- February 8, 2013.  The O'Quinn Defendants filed their Fed. R. Civ. P. 12 motions in a single instrument (D.E. 20):

    - 12(b)(1) motion to dismiss for lack of jurisdiction based on a failure of diversity, failure to join indispensable parties, and failure to meet the amount in controversy;

    - 12(b)(7) motion to dismiss for failure to join indispensable parties;

    - 12(b)(1) motion for abstention based on separate "mirror-image" action pending in Houston, Texas;

    - 12(e) motion to dismiss the fraud claims for failure to meet the heightened pleading requirements of Fed. R. Civ. P. 9(b);

- 12(e) motion to require a more definite statement regarding fraud, vicarious liability, individual defendant liability, and damages allegations, among others;

- 12(f) motion to strike immaterial and scandalous allegations; and

- Motion to abate under Tex. Bus. & Comm. Code § 17.505(a) for 60 days after an appropriate Texas Deceptive Trade Practices Act (DTPA) demand.

There is no mention of arbitration in that series of motions.

- February 15, 2013.  Defendant Treece joined in the O'Quinn Defendants' Rule 12 motions (D.E. 21), offering additional grounds for abstention based upon the action pending in Houston, Texas and additional briefing on the complaint regarding fraud pleadings and saying nothing about arbitration.

- February 26, 2013.  Defendants Laminack, Martines, and Pirtle joined in the O'Quinn Defendants' Rule 12 motions (D.E. 30).

- March 13, 2013.  Movants filed a Reply in support of the Rule 12 motions (D.E. 37).

- March 21, 2013.  Defendant Manji filed his Fed. R. Civ. P. 12 motions in a single instrument (D.E. 38):

- 12(b)(1) motion to dismiss for lack of jurisdiction based on a failure of diversity, failure to join indispensable parties, and failure to meet the amount in controversy;

- 12(b)(7) motion to dismiss for failure to join indispensable parties;

- 12(b)(1) motion for abstention based on separate "mirror-image" action pending in Houston, Texas;

- 12(e) motion to dismiss the fraud claims for failure to meet the heightened pleading requirements of Fed. R. Civ. P. 9(b);

- 12(e) motion to require a more definite statement regarding fraud and other allegations;

- o   12(f) motion to strike immaterial and scandalous allegations; and

- o   Motion to abate under Tex. Bus. & Comm. Code § 17.505(a) for 60 days after an appropriate DTPA demand.

There is no mention of arbitration in that series of motions.

- • April 17, 2013. Defendants Laminack, Martines, and Pirtle filed their respective First Amended Original Answers to Plaintiffs' First Amended Original Complaint (D.E. 47, 48, 49), still admitting jurisdiction and venue and making no mention of arbitration even after Defendant Lowenberg (no longer a defendant) filed a Motion to Compel Arbitration and Stay this Litigation (D.E. 46). Those Defendants later withdrew their Answers reciting only that they had been mistakenly filed during the DTPA stay and would be re-filed after the stay was lifted. D.E. 50, 51.

- • May 3, 2013. The O'Quinn Defendants filed their Motion to Lift the Abatement (D.E. 58) reciting that the purpose of the stay—to permit a DTPA demand and response—had been accomplished. D.E. 58. In this Motion, the O'Quinn Defendants indicated, for the first time, their intent to pursue arbitration. D.E. 58, p. 2.

On May 9, 2013, the O'Quinn Defendants filed the first motion to compel arbitration that is at issue here, followed by the Treece motion on May 20, 2013.

There is no dispute regarding the test to be applied to determine waiver. "Waiver will be found when the party seeking arbitration [1] substantially invokes the judicial process [2] to the detriment or prejudice of the other party." *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir. 1991) (internal quotation marks and citation omitted). "There is a strong presumption against finding a waiver of arbitration, and the party claiming that the right to arbitrate has been waived bears a heavy burden." *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004).

By the same token, "arbitration may not be used as a strategy to manipulate the legal process." *Mirant Corp. v. MC Asset Recovery LLC*, 613 F.3d 584, 590 n.4 (5th Cir. 2010) (citing *Khan v. Parsons Global Servs., Ltd.*, 521 F.3d 421, 427 (D.C. Cir. 2008)). More particularly, a party is not permitted to keep its right to demand arbitration in reserve indefinitely while it pursues a decision on the merits before the district court. *Mirant* at 591. "The question of what constitutes a waiver of the right of arbitration depends on the facts of each case." *Tenneco Resins, Inc. v. Davy Int'l, AG*, 770 F.2d 416, 420 (5th Cir. 1985) (citing *Burton-Dixie Corp. v. Timothy McCarthy Construction Co., Inc.*, 436 F.2d 405, 406 (5th Cir. 1971)).

To invoke the judicial process, a "party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Mirant, supra* at 589 (citing *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 329 (5th Cir. 1999)). The preliminary motions set out above were formulated to (1) test the Court's jurisdiction and its willingness to exercise same, (2) test Plaintiffs' pleadings for sufficiency of allegations under the Federal Rules of Civil Procedure, seeking clarification, and (3) obtain relief from the exercise of judicial jurisdiction pending consideration of a DTPA demand.

Plaintiffs rely on *Mirant* and *Electrostim Medical Services, Inc. v. Health Care Service Corp.*, 2012 WL 5373462, 2012 U.S. Dist. LEXIS 155107, *17 (S.D. Tex. Oct. 30, 2012) (Rosenthal, J.) to show that these actions constitute waiver of arbitration. Those cases involved efforts of discovery and motions that pertained to the disposition on the merits of the dispute—not just the definition of the claims and determination of

jurisdiction.  The Fifth Circuit has held that disputes over jurisdiction do not constitute waiver, even where they take place over an extended period of time.  *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co. (Pemex)*, 767 F.2d 1140, 1150-51 (5th Cir. 1985).   Movants here did not seek an adjudication of an affirmative defense or counterclaim.  Neither did they seek a determination of the merits of any of Plaintiffs' claims as was the case in *Mirant, supra* at 589.  Their motions were filed prior to the deadline for their answers, only a few months into the case.

Even when there is an arbitration agreement, the parties are entitled to a judicial determination that the agreement is enforceable.  9 U.S.C. § 4.  *See generally, American Family Life Assur. Co. v. Biles,* 714 F.3d 887, 893 (5th Cir. 2013) (duty to exercise federal jurisdiction to determine enforceability of arbitration agreement weighs against abstention); *Saucier v. Aviva Life & Annuity Co*., 701 F.3d 458, 463-64 (5th Cir. 2012) (same).  Such a determination obviously requires that the Court have personal and subject matter jurisdiction over the parties and the enforceability of the contract.

If the Court were to dismiss for lack of subject matter jurisdiction or abstain from exercising jurisdiction in deference to other litigation pending in another tribunal, such a determination is not one that is prejudicial to the claims.  *E.g., Nilsen v. City of Moss Point,* 674 F.2d 379, 382 (5th Cir. 1982).  Likewise, the issue of the sufficiency of the pleadings is a matter most commonly determined "without prejudice"—especially where, as here, the conclusion or prayer seeks an order requiring repleading rather than dismissal.  D.E. 20, p. 31; D.E. 38, pp. 35-36.  *See generally, Chyba v. EMC Mortgage Corp*., 450 Fed. Appx. 404, 406, 2011 WL 5838700, 1 (5th Cir. November 18, 2011).

So even if Movants had been completely successful in their preliminary motions challenging the existence of jurisdiction or its exercise and testing the sufficiency of the pleadings, the resulting ruling would not have adjudicated the merits of the claims. Proceedings that test jurisdiction and procedural compliance, while stopping short of extending into the merits of the dispute, are justified so that the parties may be assured that the decision regarding the enforceability of the arbitration agreement, particularly if the decision is a denial of enforceability, is one that is, itself, enforceable.

In their Sur-Reply, Plaintiffs argue that the request for abstention in favor of entrusting this matter to the Probate Court No. 2 of Harris County, Texas constitutes an "overt act" evincing a desire to resolve the arbitrable dispute through litigation rather than arbitration. D.E. 81, p. 2. However, Movants could not fully test this Court's jurisdiction without raising every argument available to them, including abstention in deference to the related pending litigation. Plaintiffs have not briefed the issue and this Court does not have before it—and does not decide—whether Movants would have had the right to insist upon arbitration in that Probate court had this Court abstained in deference to that litigation.

While Plaintiffs assert that Movants sought decisions on the merits of their claims, that assertion is not borne out by a review of the motions and their conclusions or prayers. Consequently, the Court holds that the preliminary motions did not invoke the judicial process in a manner that waived arbitration. Because of this ruling, the Court need not address whether Plaintiffs were prejudiced. The Court finds that Defendants did not waive their right to enforce the arbitration agreement.

## ENFORCEABILITY OF THE ARBITRATION AGREEMENT

The Fifth Circuit has outlined the test for determining the enforceability of an arbitration agreement:

> The court must first determine whether the parties agreed to arbitrate the dispute. This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. The court then must determine if any legal constraints foreclose arbitration of those claims.

*Brown v. Pacific Life Ins. Co.*, 462 F.3d 384, 397 (5th Cir. 2006) (quotation marks and citations omitted). Plaintiffs do not contest that they signed the contracts that include arbitration agreements. Affidavits, D.E. 73-1.

The Supreme Court of the United States has made it clear that, under most circumstances, the question of the enforceability of the contract containing the arbitration agreement is to be decided by the arbitrator. "We reaffirm today that, regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449, 126 S.Ct. 1204, 1210, 163 L.Ed.2d 1038 (2006).

Furthermore, the parties in the instant case adopted the Commercial Arbitration Rules of the American Arbitration Association. The Fifth Circuit has held, "We agree with most of our sister circuits that the express adoption of these [AAA] rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir.

2012).   The types of challenges to the contract-as-a-whole that are entrusted to the arbitrator include fraud in the inducement, fraud, misrepresentation, breach of contract, breach of fiduciary duty, and unconscionability.[3]   *Buckeye*, 546 U.S. at 445-46; *Brown v. Pacific Life Ins. Co.*, 462 F.3d 384, 397 (5th Cir. 2006).

Plaintiffs offer several arguments for the proposition that they should not be bound by their arbitration agreement.   Pursuant to the rule by which complaints regarding the contract-as-a-whole must be referred to the arbitrator, the Court need not—and indeed cannot—consider the following arguments to the extent that they address contractual provisions beyond just the arbitration clause:

- That there was no meeting of the minds to support the formation of an enforceable contract;

- That Defendants engaged in fraud in the inducement;[4]

- That Defendants failed to fully disclose all material facts in violation of Texas Disciplinary Rules of Professional Conduct, making the entire contract invalid or void as against public policy;

---

[3]   In their Sur-Reply, Plaintiffs argue that some of their issues do not fall within the scope of the arbitration agreement, which covers "any and all disputes, controversies, claims or demands arising out of or relating to (1) this Agreement or (2) any provision hereof or (3) the providing of services by Attorneys to Client or (4) the relationship between Attorneys and Client, whether in contract, tort or otherwise, at law or in equity, for damages or any other relief . . . "   D.E. 60-1, p. 7.   This language is ostensibly broad enough to include all stated claims, including those related to the "improper diagnosis scheme."   Because the parties agreed to arbitrate arbitrability, the Court does not decide whether any of the claims are outside the terms of the arbitration agreement.   *See Petrofac, supra.*

[4]   While Plaintiffs' briefing complains of Defendants being on notice of Plaintiffs' ignorance and misrepresenting the facts, the affidavits provide no evidence to that effect.   Instead, the affidavits complain of Defendants' failure to provide information on all terms and conditions, including the arbitration provision.   D.E. 73-1.

- That the contracts were procured illegally and unethically, in violation of statutes prohibiting barratry;[5] and

- That the contracts are procedurally unconscionable because the Plaintiffs were required to sign pre-filled attorney selection forms with O'Quinn's name on it, were not told they had a choice of attorneys, and had no independent counsel to advise them on the contract.

Plaintiffs have raised four issues that can be construed as addressing the arbitration provision, alone, making that arbitration clause subject to the Court's purview: (1) that Defendants violated a specific requirement that the limitations of arbitration be fully disclosed prior to obtaining consent; (2) that the arbitration forum prospectively limits Defendants' liability without advice of independent counsel in contravention of Mississippi law; (3) that the arbitration agreements are substantively unconscionable because enforcement relegates Plaintiffs to more than one tribunal and set of rules; and (4) that the arbitration agreements are substantively unconscionable because they are cost-prohibitive. Each of these arguments will be addressed below.

### A. Mandatory Arbitration Disclosures

Plaintiffs complain as if there are mandatory disclosures required of Defendants before an arbitration agreement may be effectively executed. However, their authorities do not substantiate such a requirement. There are no special arbitration-related

---

[5] Even if the entire contract is attacked as void under state law, it is for the arbitrator to make that decision. *Nitro-Lift Technologies, L.L.C. v. Howard*, 133 S.Ct. 500, 504, 184 L.Ed.2d 328 (2012) (*per curiam*).

mandatory disclosures in Texas or federal law.  Even if there were, by being only

arbitration-related, they would not be enforceable.

> The final phrase of § 2 . . . permits arbitration agreements to
> be declared unenforceable "upon such grounds as exist at law
> or in equity for the revocation of any contract."  This saving
> clause permits agreements to arbitrate to be invalidated by
> "generally applicable contract defenses, such as fraud, duress,
> or unconscionability," ***but not by defenses that apply only to
> arbitration or that derive their meaning from the fact that
> an agreement to arbitrate is at issue***.

*AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1746, 179 L.Ed.2d 742 (2011)

(emphasis added).  To be actionable, any complained-of nondisclosure or silence would

have to amount to fraud or mistake without special treatment related to the fact that an

arbitration agreement is at issue.  In other words, Plaintiffs have to weave a very narrow

path in that they must complain of the arbitration agreement, specifically, but use

arguments that apply to contracts generally—without attacking the contract-as-a-whole.

Pursuant to *American Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 538 (5th Cir.

2003), ordinary contract principles apply to the construction and enforcement of

arbitration agreements.  *See also* 9 U.S.C. § 2.  Fraud, duress, and mistake are defenses to

ordinary contracts.  *E.g., Wamsley v. Champlin Refining and Chemicals, Inc.*, 11 F.3d

534, 538 (5th Cir. 1993); *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 63 (Tex. 2008).

The Court thus must evaluate whether Plaintiffs' affidavits (D.E. 73-1) support the

contract defenses of fraud or unilateral mistake[6] as they apply to the arbitration provision alone.

Common law fraud requires a false representation.  *E.g., Aquaplex, Inc. v. Rancho La Valencia, Inc*., 297 S.W.3d 768, 774 (Tex. 2009).  The complaints set out in Plaintiffs' affidavits do not include any false representations, only a failure to disclose.  Fraud by nondisclosure requires a duty to disclose.  *E.g., Insurance Co. of N. America v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998).  The existence of such a duty is a question of law for the Court.  *In re International Profit Assocs*., 274 S.W.3d 672, 678 (Tex. 2009).

"As a fiduciary, an attorney is obligated to render a full and fair disclosure of facts material to the client's representation."  *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex.1988).   In *Willis*, the duty to disclose related to conduct in the course of the representation that triggered the statute of limitations for the client to sue the attorney for malpractice.   Here, the duty that Plaintiffs seek to impose relates to the terms of the agreement by which the attorney-client relationship was established in the first place— rather than to the manner in which the agreement was performed.

At least one Texas Court of Appeals has rejected the application of an attorney/client-based duty to the parties in the negotiations by which that duty is first created.  *In re Pham*, 314 S.W.3d 520, 527 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding) (mandamus denied).  In so doing, that court observed that the evidence did not reflect any basis for imposition of an attorney/client relationship prior to the

---

[6]   There is no indication that duress, if any, applies strictly to the arbitration provision as opposed to the contract-as-a-whole.  Neither is there any suggestion of a mutual mistake.

execution of the contract for representation.   Affidavit testimony, such as that of Plaintiffs here, claiming reliance on the attorney or trust in the attorney's services are conclusory without some factual basis reflecting a mutual understanding and are therefore no evidence at all.  *Id.*

Likewise, there is no legal duty to disclose the advantages and disadvantages of arbitration imposed by virtue of the Texas Disciplinary Rules of Professional Conduct or any ethics opinion,[7] as Plaintiffs suggest.  The Disciplinary Rules expressly provide that they "do not undertake to define standards of civil liability of lawyers for professional conduct.  Violation of a rule does not give rise to a private cause of action nor does it create any presumption that a legal duty to a client has been breached."  Tex. Disciplinary R. Prof'l Conduct, Preamble ¶ 15.  With respect to Ethics Opinion 586, upon which Plaintiffs rely, the Commission specifically stated, "It is beyond the authority of this Committee [sic] to address questions of substantive law relating to the validity of arbitration clauses in agreements between lawyers and their clients."

Based on those disclaimers and the public policy favoring arbitration agreements, the *Pham* court, as well as others, rejected the argument that the disciplinary rules and the ethics opinion established a legal duty that attorneys breached by including arbitration provisions in their contracts for representation.  *Pham, supra* at 526; *Sidley Austin Brown & Wood, LLP v. J.A. Green Development Corp.*, 327 S.W.3d 859, 865 (Tex. App.—

---

[7]  Op. Tex. Ethics Comm'n No. 586 (2008).

Dallas 2010, no pet.); *Labidi v. Sydow*, 287 S.W.3d 922, 927–28 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding).

Plaintiffs cite six cases in arguing that Texas courts use the Disciplinary Rules as indicators of public policy when invalidating contracts or their provisions on public policy grounds and when accumulating authority to define a standard of care for legal malpractice.   The first four cases address fee-splitting agreements in disputes between lawyers.   Three of the cases found that the agreement between the attorneys was invalid because of a failure to obtain client consent as required by the disciplinary rules.[8]   The fourth found that the factual circumstances surrounding the addition of new counsel were sufficient to demonstrate client consent such that the disciplinary rules were not used to invalidate the contract.[9]

Those cases are not helpful because they address a relationship in which both parties are attorneys and are bound by their profession's rules.   The public policy is that clients should have ultimate control over who represents them.   Such cases are acknowledged, but distinguished in *Garcia v. Garza*, 311 S.W.3d 28 (Tex. App.—San Antonio 2010, pet. denied).   In *Garcia*, the client sued the lawyer complaining that the lawyer obtained an interest in the client's realty as part of his fee.   The court refused to invalidate the contract on the basis of disciplinary rules regarding either the acquisition of

---

[8]  *Polland & Cook v. Lehmann*, 832 S.W.2d 729, 736 (Tex. App.—Houston [1st Dist.] 1992, writ denied); *Lemond v. Jamail*, 763 S.W.2d 910, 914 (Tex. App.—Houston [1st Dist.] 1988, writ denied); *Fleming v. Campbell*, 537 S.W.2d 118, 119 (Tex. Civ. App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.).

[9]  *Kuhn, Collins & Rash v. Reynolds*, 614 S.W.2d 854, 857-58 (Tex. Civ. App.—Texarkana 1981, writ ref'd n.r.e.).

a proprietary interest in the cause of action or business transactions with clients.  The disciplinary rules do not provide a basis for the automatic invalidation of a contract.

Two other cases on which Plaintiffs rely address standards of conduct in tort actions.  In *Two Thirty Nine Joint Venture v. Joe*,[10] the court acknowledged that, even without the disciplinary rules, a lawyer owes a client a duty of loyalty and freedom from conflict of interest.  The court permitted the use of the disciplinary rules only to illustrate how conduct relevant to the issues triggered by those pre-existing duties is evaluated. The rules were not used to create a duty that did not otherwise exist, as Plaintiffs here would like to do.  Citing *Two Thirty Nine*, a Southern District of Texas court used the disciplinary rules to illustrate the scope of the pre-existing fiduciary duty of confidentiality.  *Sealed Party v. Sealed Party*, No. Civ. A. H–04–2229, 2006 WL 1207732, *10-14, 2006 U.S. Dist. LEXIS 28392, *31 (S.D. Tex. May 4, 2006).  Again, the rules were not used to create a new duty.

While Plaintiffs contend that this Court must look to the intermediate appellate courts when sitting in diversity and making an *Erie* guess regarding law not yet squarely addressed by the state's highest court, and while Plaintiffs further contend that the Texas Supreme Court often looks to Louisiana's highest court's opinions, this argument assumes that this Court's decision is one of state law, only.  To the contrary, this case has triggered issues under the FAA—a federal question—with express admonitions against using state law to defeat an arbitration agreement because it is an arbitration agreement.

---

[10]  60 S.W.3d 896, 905 (Tex. App.—Dallas 2001), *rev'd on other grounds*, 145 S.W.3d 150 (Tex. 2004) (legislative immunity).

This Court is not convinced that the disciplinary rules provide a solid reason, based only upon a vague application of derivative public policy, to invalidate an arbitration agreement.

Public policy strongly favors arbitration agreements. *Moses H. Cone Memorial Hospital v. Mercury Constr. Co.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Life of America Ins. Co. v. Aetna Life Ins. Co.*, 744 F.2d 409, 413 (5th Cir. 1984) (describing public policy favoring arbitration as "overwhelming"). There may be other more generic public policy arguments regarding the nature in which arbitration agreements are formulated or incorporated into contracts that tug at the overall public benefit to be gained. But that is not enough to invalidate arbitration agreements under recent case law applying the FAA. *See American Express Co. v. Italian Colors Restaurant*, 133 S.Ct. 2304 (2013) (holding that public policy reflected in statutes and rules permitting the class action form of litigation is insufficient to invalidate a waiver of class actions in the terms of an arbitration agreement).

Plaintiffs rely on *Hodges v. Reasonover*, 103 So.3d 1069 (La. 2012), *cert. denied*, 133 S.Ct. 1494, 185 L.Ed.2d 548 (2013) as permitting the use of state disciplinary rules to invalidate an arbitration agreement. The *Hodges* court held that, under Louisiana law, agreements between attorneys and clients are subject to the highest scrutiny. While arbitration agreements between them are not "per se" improper, they must be fair and reasonable. The *Hodges* court held that the state law regarding an attorney's duties of loyalty and candor required full explanation of the types of disputes covered by the arbitration agreement and the legal rights forfeited when agreeing to arbitration.

16 / 28

In *Hodges*, the attorney and client had conducted "an ongoing business relationship" for nearly ten years before the agreement with the arbitration clause was signed. *Hodges, supra* at 1071. That fact distinguishes *Hodges* from this case and others in Texas such as *Pham, supra*, in which the agreement at issue is the first one that creates the subject attorney-client relationship, such that the duties of loyalty and candor have not yet arisen when the agreement is signed. Furthermore, a recent Texas intermediate appellate case has expressly rejected *Hodges* as contrary to Texas law. *Royston, Rayzor, Vickery & Williams LLP v. Lopez*, Nos. 13–11–00757–CV, 13–12–00023–CV, 2013 WL 3226847, *6 n.2 (Tex. App.—Corpus Christi June 27, 2013).

Plaintiffs observe that some clients had referring or associating attorneys, arguing that this scenario was "clearly evidence of a pre-retainer attorney-client relationship." Plaintiffs have failed to demonstrate—legally or factually—how an attorney-client relationship with one attorney imposes a duty of disclosure on Defendant attorneys.

Like *Pham*, *Sidley*, and *Labidi*, this Court is of the opinion that limitations on the ability of attorneys to include arbitration agreements in their client contracts is a matter better left to the legislatures, which have to date expressed no compulsion to restrain attorneys when other restraints are imposed. *E.g.,* Tex. Civ. Prac. & Rem. Code § 171.002. Even then, a state law that singles out arbitration agreements for invalidity may run afoul of the federal requirement that arbitration agreements must be enforced on par with other contracts. 9 U.S.C. § 2. *See Perry v. Thomas*, 482 U.S. 483, 492 n.9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987).

The parties have provided extensive briefing on the fraud in the inducement claim addressed in *American Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 538 (5th Cir. 2003). In that case, Lang had placed his lender on notice that he was illiterate and could not read the agreements he was asked to sign. There was a dispute in the evidence as to whether Lang knew he was signing a stand-alone arbitration agreement or whether the lending officer represented that all of the agreements addressed only the amount of the loan and the rate of interest. Under those circumstances, the Fifth Circuit held that the issue of fraud in the inducement was for the district court rather than the arbitrator and that there was a fact issue to be resolved.

This case differs from *Lang* in all material respects. There is no evidence or allegation that Plaintiffs are illiterate or that they had put Defendants on notice of any illiteracy. The arbitration agreements are part of the contract for representation and are not stand-alone documents. And there is no suggestion that Defendants represented the agreements to be something that they are not. Without these key elements, the general rule applies: parties are bound by the agreements they sign. *Lang*, at 538 (citing *Samson Plastic Conduit & Pipe Corp. v. Battenfeld Extrusionstechnik GMBH*, 718 F.Supp. 886, 890 (M.D. Ala. 1989), *St. Petersburg Bank & Trust Co. v. Boutin*, 445 F.2d 1028, 1032 (5th Cir. 1971), and *Laborers' Pension Fund v. A & C Environmental, Inc*., 301 F.3d 768, 781 (7th Cir. 2002) for the proposition that one is bound by a signed contract whether or not he reads it or even understands the language in which it is written).

Plaintiffs have failed to demonstrate that Defendants owed a duty to disclose the advantages and disadvantages of arbitration when executing the contracts of representation.  As demonstrated above, there is no duty based on a special relationship.  Neither is there any evidence or argument that Defendants had a duty to speak based upon "partial disclosure" or "voluntary disclosure" in which some material facts are withheld when other statements are made, resulting in a false impression.  *See e.g., Rivers v. Charlie Thomas Ford, Ltd.*, 289 S.W.3d 353, 359 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *Flood v. Katz*, 294 S.W.3d 756, 763 (Tex. App.—Dallas 2009, pet. denied).  Neither did Plaintiffs demonstrate a known illiteracy and misrepresentation.  Consequently, the Court rejects Plaintiffs' argument that the arbitration agreement is unenforceable due to fraud by nondisclosure.

The only other basis for Plaintiffs' argument that the arbitration agreement should not have been included in the contract is their complaint that they did not understand the arbitration agreement and would not have signed the contract had they understood the import of that provision—a unilateral mistake.  To obtain a rescission of a contractual agreement pursuant to the defense of unilateral mistake, Plaintiffs must show:  (1) the effect of the mistake is to render the agreement unconscionable;[11] (2) the mistake relates to a material feature of the contract; (3) the mistake would have been made despite the exercise of ordinary care; and (4) the parties can be returned to the *status quo ante* without prejudice.  *Monarch Marketing Sys. v. Reed's Photo Mart, Inc.*, 485 S.W.2d 905,

---

[11]   Bilateral arbitration agreements are not inherently unconscionable.  *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 678 (Tex. 2006) (orig. proceeding); *Labidi, supra* at 927.  Specific arguments regarding unconscionability-as-applied are addressed below.

906-07 (Tex. 1972); *James T. Taylor & Son v. Arlington Independent School District*, 335 S.W.2d 371, 372-73 (Tex. 1960); *City of The Colony v. North Texas Municipal Water District*, 272 S.W.3d 699, 732 (Tex. App.—Fort Worth 2008, pet. dism'd).

Plaintiffs have not made the necessary showing in order to be entitled to relief for any alleged unilateral mistake.  In particular, they have not addressed the issues of their own exercise of ordinary care or the ability of this Court to return the parties to the *status quo ante*.  As a result, they have not demonstrated that they are entitled to defeat the arbitration agreement based upon ordinary contract principles.  The Court rejects all arguments based on a duty to disclose the specific terms of the arbitration agreement separate and apart from the contract-as-a-whole.

### B. Prospective Limits on Defendants' Liability in Violation of Mississippi Law

Within the paragraph with the heading "X. ARBITRATION," and after the requirement that any dispute of any kind related to the attorney/client relationship be resolved by binding arbitration, is the sentence,

> Client shall not file a class action against Attorneys or seek to assert any claim or demands against Attorneys by or through a class action, either as the named plaintiff or as a member of the class, but rather shall submit his/her claims or demands to binding arbitration pursuant to the provisions of this Paragraph X.

*E.g*., D.E. 60-1, p. 7.  Plaintiffs argue that this waiver of relief through class action procedure is an impermissible limit on Defendants' liability.  They allege that it is

impermissible because Mississippi Rule of Professional Conduct 1.08(g)[12] does not allow a prospective limit on a lawyer's malpractice liability unless the client agrees after consultation with independent counsel—a step not taken here.[13]

The first question is how any limit on the form of the action—whether by arbitration or by prohibiting a class action—translates into a limit on Defendants' liability. The Fifth Circuit considered a challenge to a forum-selection clause on the basis that it was an impermissible prospective limit on liability in *Ginter v. Belcher, Prendergast & LaPorte,* 536 F.3d 439, 444 (5th Cir. 2008). In its discussion, it considered an arbitration agreement to be akin to a forum-selection clause and concluded:

> From all of this we can distill a general rule that including a forum-selection clause into an attorney-client agreement is usually not a limitation on malpractice liability. Instead, it is only a limitation when the selected forum has rules expressly limiting liability or if litigating in that forum would be so unfair as to be a practical limitation on liability.

Plaintiffs have not demonstrated that arbitration or a prohibition against class actions involves rules that expressly limit liability or that proceeding in arbitration of individual claims would be so unfair as to be a practical limitation on liability.

While Plaintiffs seek to distinguish *Ginter* because it did not squarely address an arbitration agreement, that distinction is inapposite. The *Ginter* case expressed the test for determining whether ***any*** agreement regarding the manner in which claims are

---

[12]   Texas Rules of Professional Conduct 1.08(g) contains the same requirement.

[13]   While this argument may not be construed as going to the contract-as-a-whole, it does not appear to pertain exclusively to the arbitration agreement and thus should be beyond the Court's purview under *Buckeye*. The Court finds that the argument, on the merits, does not apply here. However, the Court will address it in the interests of a thorough analysis of Plaintiffs' arguments as they apply to the arbitration provision.

resolved operates as an impermissible prospective limit on liability based on the location, identity, or rules of the decision-maker. If those issues do not reveal that referral to arbitration or requiring the litigation of individual claims individually will constitute a limitation on liability, Rule of Professional Conduct 1.08(g) is not triggered. The Fifth Circuit has observed that "arbitrators have the authority to grant any relief that can be given by a court." *Apache Bohai Corp, LDC v. Texaco China BV*, 480 F.3d 397, 404 n.7 (5th Cir. 2007) (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 69 (1995)). Thus a requirement of arbitration is not tantamount to a limit on liability.

Plaintiffs rely on *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co.*, 20 S.W.3d 692, 699 (Tex. 2000). In *Keck*, a client's release of malpractice liability was limited to potential claims that might arise from conduct already completed at the time of the release. To the extent that there was an argument that the release applied to future conduct, it was subjected to the rules that require that the client be separately represented. The attorneys were not permitted to use the release to absolve them from claims arising out of future conduct. Nothing in *Keck* addresses an arbitration agreement or a waiver of class actions. Consequently, this case does not get Plaintiffs past the first hurdle of showing that arbitration of individual claims acts as a prospective limit on liability.

Citing several older cases, Plaintiffs argue that public policy favors the ability to use class action procedure and, absent such a procedure, small claims might lie dormant, effectively insulating a defendant from liability. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997); *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 338 (1980); *In re Charter Co.*, 876 F.2d 866, 871 (11th Cir. 1989); *In re American Reserve*

*Corp.*, 840 F.2d 487, 489 (7th Cir. 1988).  However, more recently the Supreme Court has twice upheld waivers of class actions in arbitration agreements.

In *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011), the Supreme Court held that a state law that made class action waivers unconscionable was preempted by the Federal Arbitration Act (FAA).  The state's public policy against such waivers was insufficient to overcome the FAA's public policy in favor of the right of the parties to a contract to obtain the benefit of their bargain as expressed in that contract.  The Court specifically rejected the argument that, as a result of the ruling, small-dollar claims might slip through the legal system.  131 S.Ct. at 1754.  "But States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons."  *Id*.

This year, the Court made it clear that class action waivers in arbitration agreements are enforceable even "when the plaintiff's cost of individually arbitrating a federal statutory claim exceeds the potential recovery."  *American Express, supra*.  The result can be no different when the claim is one arising under the common law.  The Court's conclusion was that it need only protect the right to make a claim.  It does not have to require procedures that make prosecuting that claim cost-effective.  *Id*. at 2311.

The Court rejects Plaintiffs' argument that the arbitration agreement, with its class action waiver, is unenforceable as a prospective limit on liability.

## C. Substantive Unconscionability:  Multiple Tribunals

Plaintiffs assert that Defendant Manji has not moved to compel arbitration and has not expressly consented to arbitration, thus making the claims against him subject only to

litigation in this Court.   On the other hand, the other Defendants seek arbitration, subjecting Plaintiffs to "two incompatible procedures and forums."  D.E. 73, p. 35.  They suggest that this is unconscionable, citing *Bruszewski v. Motley Rice, LLC*, 2012 WL 6691643, 2012 U.S. Dist. LEXIS 181187 (E.D. Ky. Dec. 21, 2012).  Defendant Manji has since consented to any arbitration ordered by this Court pursuant to the pending motions. Initial Pretrial Conference, August 16, 2013.  Plaintiffs' argument that they are subjected to multiple tribunals is moot.

### D. Substantive Unconscionability:  Cost-Prohibitive

Last, Plaintiffs argue that sending their particular claims to arbitration would render them cost-prohibitive, thus making the arbitration agreement unconscionable.  The Supreme Court has held that the party resisting arbitration bears the burden of proving that the claims are unsuitable for arbitration.  *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91-92 (2000).  "The "risk" that [a plaintiff] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement."  *Id*.  *Accord, In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001).  Plaintiffs are required to supply evidence not just of the abstract cost of arbitration but of the actual costs they will incur as compared to the actual cost of trial, along with evidence that those costs are insurmountable for them.[14]  *Green Tree, supra* at 91; *FirstMerit Bank, supra* at 757.

---

[14]   Movants have challenged Plaintiffs' evidence of their ability to absorb the costs of arbitration on the basis that it is Plaintiffs' counsel who is, allegedly, contractually obligated to front the costs of arbitration.  Because of the Court's analysis of other issues, it does not reach any conclusion as to whether the fee agreement contractually obligates counsel to pay the costs or whether any such obligation is relevant to the issue of unconscionability of compelling arbitration.

Here, Plaintiffs have offered evidence of the American Arbitration Association's (AAA's) Commercial Arbitration Rules, the affidavit of an "expert" regarding the anticipated cost for the arbitrator, and the parties' affidavits showing that they are at or near the poverty line.   D.E. 73, pp. 36-37.   Movants argue that this evidence is incomplete, objectionable, and does not support the fact finding necessary to a conclusion that the arbitration agreements are unconscionable.

With respect to the arbitration rules and fee schedule, Movants point out that Plaintiffs have not addressed the rule, identified in relevant case law, that the AAA has the ability to provide a hardship deferral or reduction in fees.   D.E. 75, p. 28.   *See In re Olshan Foundation Repair Co.*, 328 S.W.3d 883, 896-97 n.6 (Tex. 2010).   Plaintiffs have not shown that they have made an inquiry or that they do not fall within the criteria for this relief from some or all of the initial cost of the arbitration.

With respect to the "expert" affidavit of Bruce Wettman (D.E. 73-14), Movants object that the opinions are irrelevant and unreliable, as they are not based on information specific to this case and are thus speculative.   The Court agrees and the objections are SUSTAINED.   Proof of an average cost may provide some context, but is not sufficiently specific to the question at hand to be relevant and useful in determining whether the cost for this case is so excessive as to render arbitration unconscionable under the circumstances.   Judge Wettman does not address how the issues in this case compare to the cases he has worked on.   Nor does he mention whether he has ever been asked to, or required to, reduce his fees on the basis of hardship.   Evidence of fees that have been charged in other cases does not establish what will be charged in this case.

The financial status of Plaintiffs is also irrelevant in a vacuum. While their relative poverty may make payment of the fees for arbitration prohibitively expensive, that same poverty could also make them eligible for a reduction in those fees, as mentioned above. Furthermore, as identified in *In re Poly-America, L.P.*, 262 S.W.3d 337, 354-57 (Tex. 2008), the remedies within the power of the arbitrators include the ability to adjust cost awards to allow full vindication of legal rights. See D.E. 73-13, pp. 7-8 (AAA rules 49-50, allowing arbitrators to apportion fees and expenses in their awards).

Additionally, if the Court had been presented with sufficient evidence that arbitration would be unconscionable based upon the cost to use the arbitral forum, the Court could use the severability clause of the FAA and re-distribute that cost in order to salvage as much of the arbitration agreement as possible. *Jones v. Fujitsu Network Communications, Inc*., 81 F.Supp.2d 688, 693 (N.D. Tex. 1999) (severing and refusing to enforce the fee-splitting requirement for the fees and expenses of arbitration while still ordering mandatory arbitration under the FAA).

Last, and perhaps most important, is the fact that the cost-prohibitiveness of Plaintiffs' claims in arbitration is not an exercise in comparing the expense of a new category of costs against not having to bear any expense in that category. The question is whether all of the costs of arbitration, weighed against all of the costs of litigation, render the claims incapable of vindication. Plaintiffs have not addressed whether arbitration expenses would, overall, meet or exceed those of litigation, considering that arbitration is generally touted as more efficient and streamlined than litigation, generally.

The Court is mindful of the Supreme Court's ruling that arbitration agreements are enforceable even if they render claims cost-ineffective.  *American Express, supra.*  Unconscionability has always been, and remains, a difficult threshold to overcome.  Plaintiffs have not supplied sufficient evidence on unconscionable costs.  The Court rejects Plaintiffs' challenge regarding unconscionable costs.

### THE PEARSON BARIA CONTRACTS

Plaintiffs James Miller and Ernest Smith filed a separate Supplemental Response (D.E. 93), asserting that the O'Quinn contract with its arbitration agreement does not apply to them because their contract with referring lawyers, Pearson Baria, precedes, supercedes, and controls over the terms of the O'Quinn contract.  The Pearson Baria contract does not contain an arbitration clause and further states, "In the event Attorney associates any other attorneys or law firms, such attorneys and law firms shall be subject to this retainer agreement."  D.E. 73-6, pp. 1, 4.

Plaintiffs cite no evidence that any of Defendants in this case were parties to, agreed to, or even knew about, the terms of the Pearson Baria contract.  They fail to provide argument or authorities as to how this retainer agreement can govern a separate contractual relationship between separate parties.  While they complain that the Pearson Baria attorneys had existing attorney/client relationships with these Plaintiffs and that they failed to disclose the import of the O'Quinn arbitration agreement, the Pearson Baria attorneys are not parties to this case and their liability for negligence or a breach of fiduciary duty, if any, is not at issue here.

The Court rejects Plaintiffs Miller and Smith's argument that the Pearson Baria contract affects the enforceability of the O'Quinn arbitration agreement.

## CONCLUSION

For the reasons set out above, the Court GRANTS the motions to compel arbitration (D.E. 60, 62).  Plaintiffs are ORDERED to arbitrate their claims against all Defendants in Harris County, Texas in accordance with the Commercial Arbitration Rules in effect with the American Arbitration Association.  The Court STAYS this action and ORDERS the parties to file with the Court a Status Report on November 30, 2013 and every six months thereafter to advise whether the matter has been resolved and this action may be dismissed.

ORDERED this 3rd day of September, 2013.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE